KARL WILLIAM JENSEN

v.

ROBERT G. McINERNEY

Civil No. 227-1967

District Court of the Virgin Islands

Div. of St. Croix
Christiansted Jurisdiction

May 16, 1969

*See, also, 299 F.Supp. 1039*

---

[1] Act of July 18, 1966, Pub. L. 89–507, § 1, 80 Stat. 308, amending 28 U.S.C. § 2412.

YOUNG, ISHERWOOD, GIBBS & CARNEY (JAMES H. ISHER-
WOOD, ESQ., of counsel), Christiansted, St. Croix, Virgin
Islands, *for plaintiff*

JAMES, HODGE & TONKIN (RONALD H. TONKIN, ESQ., of
counsel), Christiansted, St. Croix, Virgin Islands, *for de-
fendant*

MARIS, *Circuit Judge*

ON MOTION TO DISMISS THE COMPLAINT

OPINION

MARIS, *Circuit Judge*

The plaintiff, Karl William Jensen, filed a complaint in
the District Court of the Virgin Islands seeking damages
from the defendant, Robert G. McInerney, in the sum of
$40,290.00, together with costs of medical treatment, past,
present and future. The complaint alleges that the defend-
ant in September 1966 had employed the plaintiff as an
electrician's helper in defendant's electrical business at an
hourly wage of $1.75; that as part of the employment con-
tract the defendant, under the Virgin Islands workmen's
compensation law, 24 V.I.C. §§ 251 et seq., was required to
insure the plaintiff, which the defendant had failed to do,
thereby breaching his employment contract; that on No-
vember 3, 1966 the plaintiff, in the course of his employ-

341

ment, was electrocuted when an antenna, which plaintiff was assisting defendant to erect, fell across a high tension wire, as a result of which the plaintiff suffered permanent disability, namely, the loss of his right arm, the loss of four toes of his right foot, the loss of the big toe of his left foot, and loss of the use of his left arm and right leg, for which, under the workmen's compensation law, 24 V.I.C. § 254, as amended, the plaintiff's employer was liable for compensation. The complaint and summons were served on the defendant by registered mail at Naples, Forida.

The defendant has appeared specially and has moved to dismiss the complaint under Rule 12(b)(2), F.R.C.P., for lack of jurisdiction over him. His contention is that Rule 4(e), F.R.C.P., required the plaintiff, before making extraterritorial service upon the defendant in Florida, to procure a court order directing service by publication and mail under the provisions of 5 V.I.C. § 112. He also asserts that since none of the grounds set out in section 112 as bases for substituted or extraterritorial service appears in this case, this court has no authority in any event to exercise jurisdiction in personam over him, a nonresident, who was not served within the territory. The fact is, however, that the plaintiff did not proceed under 5 V.I.C. § 112 but rather, as he had a right to do, under Rule 4(e), F.R.C.P.,[1] he proceeded under the Uniform Interstate and International Procedure Act which was enacted in the Virgin Islands on March 15, 1965, 5 V.I.C. §§ 4901 et seq. Under section 4911 of that Act, 5 V.I.C. § 4911, service of process outside the territory may be made, inter alia, "(3) by any form of mail addressed to the person to be served and requiring a signed receipt" in any case in which the court is empowered under the provisions of section 4903

---

[1] Sections 112 and 4911 of title 5, V.I.C., are not mutually exclusive. Compare Parks v. Slaughter, D.C.W.D., Okla. 1967, 270 F.Supp. 524.

of the Act, 5 V.I.C. § 4903,[2] to exercise jurisdiction over a nonresident defendant:

Section 4903 provides:

"§ 4903. Personal jurisdiction based upon conduct

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this territory;

(2) contracting to supply services or things in this territory;

(3) causing tortious injury by an act or omission in this territory;

(4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;

(5) having an interest in, using, or possessing real property in this territory; or

(6) contracting to insure any person, property, or risk located within this territory at the time of contracting.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." [5 V.I.C. § 4903].

█ The plaintiff contends that it is clear from the allegations of his complaint that the defendant, at the time of the plaintiff's injury, was transacting business and contracting to supply services or things in this territory, within the meaning of clauses (1) and (2) of section 4903(a). These allegations may, of course, later be proved by the defendant to be untrue but since the defendant has not asked leave at this stage of the case to offer evidence to controvert them, I must take them to be true for the purposes of the present motion. I must, therefore, deter-

---

[2] Dreis v. Kelly, 4 V.I. 364, 304 F.2d 3, cited by the defendant, was decided by the Court of Appeals in 1962, prior to the enactment in the Virgin Islands of the Uniform Interstate and International Procedure Act, and, therefore, has no application to this case.

343

mine whether the allegations of the complaint state a case of doing business or contracting to supply services or things, or doing any other act described in section 4903(a), in the Virgin Islands on and before November 3, 1966, the date of the plaintiff's injury.

■ The significant allegations are these:

"Plaintiff and defendant are residents of St. Croix. . . . In September, 1966 defendant employed plaintiff as an electrician's helper in defendant's electrical business at an hourly wage of $1.75. . . . On or about November 3, 1966 plaintiff, while working for defendant in the course of his employment, was electrocuted when an antenna, which plaintiff was assisting defendant to erect, fell across a high tension wire." I am satisfied that these allegations are adequate, if proved, to establish that in September and November 1966 the defendant was engaged in a business in the Virgin Islands, to wit, the electrical business and that on November 3, 1966, he was engaged in performing a contract to supply a thing in the Virgin Islands, namely, an antenna.

■ Section 4903(b) of the Act, 5 V.I.C. § 4903(b) provides that when jurisdiction is based solely on Section 4903, only a claim for relief arising from acts enumerated in that section may be asserted in the suit. The claim for relief here asserted arises under the Workmen's Compensation Act of the Virgin Islands, 24 V.I.C. §§ 251 et seq., which by section 251, as amended in 1965, applies to "all employers who employ one or more employees" affected by the Act. Section 264 of the Act, 24 V.I.C. § 264, which was in force in 1966, required every employer to secure the payment of compensation under the Act to his employees by insuring with the Government Insurance Fund. This the defendant did not do and it is a major basis of the plaintiff's claim for relief. As a statutory man-

date upon the employer, it was an implied term of the contract of employment[3] and as such it was an obligation growing out of the defendant's conduct of his electrical business in the Virgin Islands. Moreover, it would appear to bring the defendant within the express language of clause (6) of section 4903(a) of the Act, 5 V.I.C. § 4903(a), as a person "contracting to insure any person . . . located within this territory at the time of contracting". The facts of the defendant's situation, as alleged in the complaint, thus clearly fall within clauses (1), (2) and (6) of subsection (a) of section 4903, broadly interpreted, and subsection (b) of that section is satisfied so as to give this court jurisdiction in personam over the defendant to adjudicate the plaintiff's claim for relief. It remains to consider whether the Uniform Interstate and International Procedure Act, as thus construed to give this court power to exercise jurisdiction in personam over this non-resident defendant upon extraterritorial service, runs afoul of the due process clauses of section 3 of the Revised Organic Act and the Fifth Amendment of the Constitution.

▬ One of the most elementary of legal principles is that a basis for jurisdiction must exist before a court has competence to act. But it is a far cry indeed from the concept expressed 90 years ago in Pennoyer v. Neff, 1878, 95 U.S. 714, 24 L.Ed. 565, that jurisdiction to enter a valid personal judgment on a money demand against a nonresident defendant could be obtained only by personal service upon him within the state or his voluntary appearance, and the present day concept that the exercise of jurisdiction in personam by a court of a state[4] over one who is not present in the state and who has been served extrater-

---

[3] Am. Jur. 2d Contracts § 257.

[4] The term "state", in this context, when applied to different parts of the United States includes the territory of the Virgin Islands. 1 V.I.C. § 41.

ritorially does not offend the due process clause if he has "certain minimum contacts with" the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ", International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 90 L.ed. 95, 102, 161 ALR 1057. Thus it has been said by Judge Learned Hand that "a state may give judgment in personam against a nonresident, who has only passed through its territory, if the judgment be upon a liability incurred while he was within its borders . . . . The presence of the obligor within the state subjects him to its law while he is there, and allows it to impose upon him any obligation which the law entails upon his conduct." Kilpatrick v. Texas & P. Ry. Co., 2 Cir. 1948, 166 F.2d 788, 791. The jurisdiction does not rest, as was formerly thought, on the consent of the defendant or his implied appointment of an agent for service, but rather on power derived from his acts done within the state. Olberding v. Illinois Central R. Co., 1953, 346 U.S. 338, 98 L.ed. 39. In McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 223, 2 L.ed.2d 223, 226, the Supreme Court went so far as to hold that "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." It is true that the Supreme Court in Hanson v. Denckla, 1958, 357 U.S. 235, 251, 2 L.ed.2d 1283, 1296, warned that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal

contacts' with that State that are a prerequisite to its exercise of power over him." In the circumstances of the Hanson case, the Supreme Court failed to find such minimal contacts, concluding that the cause of action in that case was not one that arose out of an act done or transaction consummated in the forum State, however, and in that respect that case was distinguishable from McGee v. International Life Ins. Co. and from the present case.

The statute with which we are here concerned, the Uniform Interstate and International Procedure Act, 5 V.I.C. §§ 4901 et seq., was approved by the Conference of Commissioners on Uniform State Laws and the American Bar Association in 1962, 9B Uniform Laws Annotated pp. 305 et seq. Its provisions were drawn from state statutes, principally those of Illinois, which have been given expansive interpretations by the courts under the rules recently laid down by the Supreme Court to which I have referred. The Commissioners on Uniform State Laws in their note to section 1.03 of the uniform act, which became section 4903 of the Act when incorporated in title 5 of the Virgin Islands Code, state:

"Each of the subdivisions in subsection (a) will independently support jurisdiction. In some instances, a jurisdictional basis may be found under more than one subdivision. Thus, a defendant's liability may arise under subdivision (1) 'transacting business' and either subdivision (3) 'causing tortious injury by an act or omission in this state' or subdivision (4) 'causing a tortious injury in this state by an act or omission outside this state.' Each of the subdivisions will support a cause of action under any theory of law. For example, a claim arising from 'transacting business' may sound in contract, tort, or quasi contract. See comment to section 1.03 (b).

\* \* \*

"Section 1.03 (a) (1) is derived from the Illinois Act. Ill. Stat. Ann. c. 110, § 17 (1) (a). This provision should be given the same expansive interpretation that was intended by the draftsmen

of the Illinois Act and has been given by the courts of that state. See, e.g., Berlemann v. Superior Distributing Co., 17 Ill. App.2d 522, 151 N.E.2d 116 (1958). See generally Jenner, Jr. & Tone, Historical and Practice Notes, Smith-Hurd Illinois Stat. Ann. c. 110, § 17 (1956), id. (1961 Supp.); Cleary & Seder, Extended Jurisdictional Bases for the Illinois Courts, 50 NW. U.L. Rev. 599, 607–09 (1955). The 'transaction of any business in a state' is employed as a jurisdictional basis by an ever increasing number of state statutes. Mich. Stat. Ann. §§ 27A.705, 27A.715, 27A.725, 27A.735; N.Y.C.P.L.R. § 302(a)(1) (effective Sept. 1, 1963); Tenn. Code Ann. § 20–220; cf. N.H.Rev. Stat. Ann. § 300: 11; Wyo. Stat. Ann. § 17–44.

"Section 1.03(a)(2) is derived from Mich. Stat. Ann. §§ 27A.705, 27A.715, 27A.725, 27A.735. Essentially similar provisions are Mont. R. Civ. Pr. 4B(1)(e); Wis. Stat. Ann. tit. 25, § 262.05. Broad statutes which base jurisdiction upon the entry into a contract 'to be performed in whole or in part by either party in the state' are Minn. Stat. Ann. § 303.13; Vt. Stat. Ann. tit. 12, § 855; cf. N.C.Gen.Stat. § 55–145(1).

* * *

"The constitutionality of section 1.03(a)(2) is supported by WSAZ, Inc. v. Lyons, 254 F.2d 242 (6th Cir. 1958); Berlemann v. Superior Distributing Co., 17 Ill. App.2d 522, 151 N.E.2d 116 (1958); Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670 (1959); S. Howes Co. v. W. P. Milling Co. 277 P.2d 655 (Okla. 1954); cf. McGee v. International Life Ins. Co., 355 U.S. 220 (1957)." [9B U.L.A. pp. 310–311].

 The leading case in Illinois on the subject is Nelson v. Miller, 1957, 11 Ill.2d 378, 143 N.E.2d 673. In that case the Supreme Court of Illinois considered section 17 of the Illinois Civil Practice Act, from which the language "transacting any business in this state"[5] of § 1.03(a)(1) of the Uniform Act was derived. The court stated [143 N.E.2d at p. 676]:

---

[5] In adopting the Uniform Act the Legislature of the Virgin Islands changed the word "state" in clause (1) of section 1.03(a) to read 'territory'. 5 V.I.C. § 4903(a)(1).

"Defendant's main contention is that the amended sections deny him due process of law, and so violate the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of Illinois, S.H.A. Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, was decided in 1878, significant social, technological, and legal developments have occurred. Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights. Mr. Justice Holmes's observation, 'The foundation of jurisdiction is physical power, * * *.' McDonald v. Mabee, 1917, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, can no longer be read restrictively. The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (International Shoe Co. v. Washington, 1945, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95,) but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense."

██ Also to similar effect are cases in other states which have adopted the uniform act or statutes similar to it. Woodring v. Hall, 1968, 200 Kan. 597, 438 P.2d 135; Safeway Stores, Inc. v. Shwayder Brothers, Inc., 1964, 238 Ark. 768, 384 S.W.2d 473; Waukesha Building Corporation v. Jameson, D.C.W.D. Ark. 1965, 246 F.Supp. 183.[6] And it has been held that a judgment rendered under the authority of the uniform act upon extraterritorial service is entitled to full faith and credit in another state. Roberts v. Worthen Bank & Trust Co., 1966, Miss., 183 So.2d 811, 20 A.L.R.3d 1190.

---

[6] See, also, Annotations 10 A.L.R.2d 200; 20 A.L.R.3d 1201; 23 A.L.R.3d 551.

■ I conclude that construed as conferring upon this court power to exercise jurisdiction upon extraterritorial service over a claim for relief against this nonresident defendant alleged to arise out of transacting business in this territory, contracting to supply things in this territory, and contracting to insure a person located in this territory, section 4903 of the Uniform Interstate and International Procedure Act, 5 V.I.C. § 4903, does not deny the defendant due process of law.

The defendant's motion to dismiss the complaint for want of jurisdiction will accordingly be denied.