James CARTY, as personal representative of the Estate of Rita Davis Connor, Deceased, on behalf of the Estate, heirs and survivors of said decedent, and Cornelius Dupie, as personal representative of the Estate of Maymond Dupie, Deceased, on behalf of the Estate, heirs and survivors of said decedent, and Sadie Burnett Smith, as personal representative of the Estate of Anthony Smith, Deceased, on behalf of the Estate, heirs and survivors of said decedent, and Elkin Alfred Carty, as personal representative of the Estate of Virgile Clementina Carty, Deceased, on behalf of the Estate, heirs and survivors of said decedent

v.

BEECH AIRCRAFT CORPORATION, a corporation; Avco-Lycoming, a corporation; the Bendix Corporation, a corporation; and Herman Lloyd, as the personal representative of Clayton Lloyd, Deceased, d/b/a Valley Air Service.

Lena LLOYD, as personal representative of Clayton Lloyd, Deceased,

v.

BEECH AIRCRAFT CORPORATION, Avco-Lycoming and the Bendix Corporation, Beech Aircraft Corporation, Avco-Lycoming and the Bendix Corporation, Appellants.

Nos. 81–2427, 81–2428.

United States Court of Appeals, Third Circuit.

Argued Dec. 9, 1981.

Decided May 21, 1982.

John J. Mahon (argued), Charlotte Amalie, St. Thomas, V. I., Gerald C. Sterns, San Francisco, Cal., for appellees James Carty, et al.

G. Luz A. James (argued), Christiansted, St. Croix, V. I., for appellee Lena Lloyd.

Maria Tankenson Hodge (argued), Charlotte Amalie, St. Thomas, V. I., for appellee Clayton Lloyd, deceased, d/b/a Valley Air Service.

Alexander A. Farrelly (argued), Birch, De Jongh & Farrelly, Charlotte Amalie, St. Thomas, V. I., for appellant Beech Aircraft Corp.

Britain H. Bryant (argued), Bryant & Lenahan, Christiansted, St. Croix, V. I., for appellant Avco-Lycoming.

R. Eric Moore (argued), O'Brien & Moore, Christiansted, St. Croix, V. I., for appellant Bendix Corp.

Before HUNTER, VAN DUSEN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

These are appeals pursuant to 28 U.S.C. § 1292(b) from an interlocutory order of the District Court of the Virgin Islands denying appellants' motions to dismiss the complaints in these wrongful death actions on the grounds of lack of subject matter and personal jurisdiction. For the reasons which follow, we affirm the order of the District Court denying the motions to dismiss for lack of subject matter jurisdiction, but reverse the order denying the motions to dismiss for lack of personal jurisdiction.

## I.

### BACKGROUND

This case arises out of the crash of an airplane on December 24, 1977 while it was en route to Anguilla, British West Indies, from St. Maarten, Netherlands Antilles, in which the pilot and all of the passengers were killed. The aircraft was owned and operated by Valley Air Service, a commuter airline serving several Caribbean Islands, including the United States Virgin Islands, under the sole proprietorship of Clayton Lloyd, the pilot on the fatal flight, and came down in the area of St. Maarten, in Dutch territorial waters. Two wrongful death actions, now consolidated, were filed in the District Court of the Virgin Islands as a result of the crash.[1] In the first action, the personal representatives of five of the deceased passengers brought suit against the personal representative of Clayton Lloyd, doing business as Valley Air Service; Beech Aircraft Corp., the manufacturer of the aircraft; Avco-Lycoming, the manufacturer of the plane's engines; and The Bendix Corporation, the manufacturer of certain engine components. Valley Air cross-claimed against the other defendants in that action. In the second action, the pilot's widow, Lena Lloyd, brought suit as his personal representative against Beech, Avco-Lycoming, and Bendix.

The claims against Beech, Avco-Lycoming, and Bendix are predicated on two theories of liability: negligent design and manufacture of the aircraft, its engines or its fuel injector devices, and failure to warn of the defect. Beech, Avco-Lycoming and Bendix moved to dismiss the complaints and Valley Air's cross-claim on the grounds of lack of subject matter and personal jurisdiction. The District Court denied the motions to dismiss. The court held that it had subject matter jurisdiction under 48 U.S.C.

§ 1406 and under 4 V.I.C. § 32, that personal jurisdiction over the moving defendants was conferred by the Virgin Islands long arm statute, 5 V.I.C. § 4903, and that "the moving defendants have sufficient 'minimum contacts' with the forum, such that application of the long arm statute to them does not violate their due process rights." *Carty v. Beech Aircraft Corp.*, No. 78–96, joint app. at 3–4 (D.V.I. Jan. 19, 1981).[2] The District Court certified its order denying the motions to dismiss pursuant to 28 U.S.C. § 1292(b), and we granted leave to appeal.

## II.

### SUBJECT MATTER JURISDICTION

The original briefs of the parties and the supplemental briefs directed to the issue of subject matter jurisdiction evince some confusion as to the basis of the District Court's subject matter jurisdiction to hear this matter. In part, the uncertainty may stem from the unusual circumstances of this case, in which suit has been filed in the Virgin Islands arising out of an accident which happened elsewhere on behalf of decedents who resided elsewhere. Thus, it is first necessary to establish the basis on which the District Court has power to entertain this litigation. Analysis of the jurisdiction of the District Court must be made in light of historical perspective and the applicable authorities, including statutes and cases.

The United States acquired the Virgin Islands from Denmark in 1916. The convention between the United States and Denmark proclaimed by the President on January 25, 1917 did not address the issue of the judicial system to be in effect in the Virgin Islands. Shortly thereafter, on March 3, 1917, Congress enacted "An Act To provide a temporary government for the West Indian Islands acquired by the United

---

1. A third action, *Smith v. Avco-Lycoming*, 497 F.Supp. 622, brought by the representatives of the passengers against Beech, Avco-Lycoming, and Bendix, is pending in the Eastern District of Pennsylvania. The motion of defendants Avco-Lycoming and Bendix to dismiss on the ground of forum non conveniens was denied on

August 15, 1980. Beech's motion to dismiss for lack of personal jurisdiction and improper venue was denied on October 6, 1980.

2. Citations to the District Court's opinion are to the pagination in the copy included in the Joint Appendix of Appellants Avco and Bendix.

States from Denmark," which provided that "except as hereinafter provided, all military, civil, and judicial powers necessary to govern the West Indian Islands acquired from Denmark shall be vested in a governor and in such person or persons as the President may appoint, and shall be exercised in such manner as the President shall direct until Congress shall provide for the government of said islands." Act of March 3, 1917, ch. 171, § 1, 39 Stat. 1132. Section 2 thereof provided in part:

> That until Congress shall otherwise provide, . . . local laws [in effect at the time of proclamation of the Convention] shall remain in force and effect in said islands, and the same shall be administered by the civil officials and through the local judicial tribunals established in said islands . . . . The jurisdiction of the judicial tribunals of said islands shall extend to all judicial proceedings and controversies in said islands to which the United States or any citizen thereof may be a party.

Act of March 3, 1917, ch. 171, § 2, 39 Stat. 1132.[3]

3. From 1917 until 1931, the Virgin Islands were under the administration of the Navy Department, with a naval governor assisted by the local colonial councils established by Denmark. In 1931, administration of the Virgin Islands was transferred to the Interior Department, and a civilian governor was appointed.

4. The 1921 municipal ordinances also provided:
Section 11. The Police Courts consist of three in number; one to be held at the town of Charlotte Amalie; and one to be held at the town of Christiansted; and one to be held at the town of Frederiksted. Each Police Court has jurisdiction through the sub-judicial District in which it is held of all the offenses cognizable by the Police Courts.

. . . . .

Section 18. The Police Court shall exercise jurisdiction, but not exclusive, in the following causes:
(1). For the recovery of specific personal property, when the value of the same does not exceed two hundred dollars;
(2). For the recovery of money or damages when the amount claimed does not exceed two hundred dollars;
(3). To give judgment without action upon confession of the defendant for any of the causes specified in this section.

The "local judicial tribunals" consisted primarily of the District Court. Its "general and original jurisdiction" was set forth in municipal ordinances enacted by the Colonial Council for St. Thomas and St. John and the Colonial Council of St. Croix in 1921, which provided:

> Section 1. The Judicial power of the Virgin Islands of the United States is hereby declared to be vested in a District Court, Police Courts and Juvenile Courts and a District Court Commissioner.

> Section 2. The District Court is a court of general and original jurisdiction in all civil, criminal, admiralty, equity, insolvency and probate matters and causes, unless jurisdiction is conferred on some other court, in which event the jurisdiction of the District Court is concurrent.

Ordinance enacted by Colonial Council for St. Thomas and St. John, Dec. 8, 1921; Ordinance enacted by Colonial Council of St. Croix, Aug. 6, 1921. The police courts, which were apparently not courts of record, had non-exclusive jurisdiction over minor criminal and civil matters.[4]

The Police Courts shall also have jurisdiction, but not exclusive, of the following criminal cases:
(1). Larceny when the value of the property does not exceed fifty dollars;
(2). Assault or assault and battery not charged to have been committed with intent to commit a felony, or in the course of a riot, or with any weapon or upon a public officer when upon duty;
(3). Of any other misdemeanor;
(4). Of any offense wherein jurisdiction is specifically conferred upon the Police Court;
(5). The Judge of the Police Court shall also exercise power as a magistrate and shall be coroner.
Section 19. The jurisdiction conferred by the last section does not extend, however—
(1). To an action in which the title to real property shall come into question;
(2). To an action for false imprisonment, libel, malicious prosecution, criminal conversation, seduction upon a promise to marry, in actions of an equitable nature, or in admiralty causes.
Ordinance enacted by Colonial Council for St. Thomas and St. John, Dec. 8, 1921; Ordinance enacted by Colonial Council of St. Croix, Aug. 6, 1921.

On June 22, 1936, Congress enacted the Organic Act of the Virgin Islands. Section 25 provided:

> The judicial power of the Virgin Islands shall be vested in a court to be designated "the District Court of the Virgin Islands" and in such court or courts of inferior jurisdiction as may have been or may hereafter be established by local law: *Provided*, That the legislative assembly may provide for the organization and conduct of a Superior Court of the Virgin Islands and may transfer from the district court to such Superior Court jurisdiction over any or all causes other than those arising under the laws of the United States. Appeals from the Superior Court shall be as provided by law in the case of appeals from the district court.

Act of June 22, 1936, ch. 699, § 25, 49 Stat. 1807.

Section 28 provided:

> The district court shall have jurisdiction of—
>
> (1) All criminal cases under the laws of the respective municipalities or under the laws of the United States applicable to the Virgin Islands;
>
> (2) All cases in equity;
>
> (3) All cases in admiralty;
>
> (4) All cases of divorce and annulment of marriage;
>
> (5) All cases at law involving principal sums exceeding $200;
>
> (6) All cases involving title to real estate;
>
> (7) All appeals from judgments rendered in the inferior courts;
>
> (8) All matters and proceedings not otherwise hereinabove provided for which, on the date of enactment of this Act, were within the jurisdiction of the District Court of the Virgin Islands, or of the judge thereof, or which may hereafter be placed within the jurisdiction of the District Court of the Virgin Islands, or of the judge thereof, by local law.
>
> The district court shall also have concurrent jurisdiction with the inferior courts as provided in section 32.[5]

*Id.* § 28. It is thus evident from this enumeration of categories in broad terms that when Congress acted to establish the District Court of the Virgin Islands, it established it as a court of original and general jurisdiction.

The 1936 Organic Act was succeeded by the 1954 Revised Organic Act, Act of July 22, 1954, ch. 558, 68 Stat. 497, now codified at 48 U.S.C. § 1541 *et seq.*, which is the applicable statute today. In addition to its express provision of federal question jurisdiction for the District Court, the 1954 Revised Organic Act eliminated the categorical listings of the jurisdiction of the District Court as they appeared in the 1936 Organic Act and substituted therefor the broad reference to "general original jurisdiction." That provision, which remains in the form enacted in 1954, states:

> The District Court of the Virgin Islands shall have the jurisdiction of a district court of the United States, in all

---

5. Section 32 provided:

> The inferior courts shall have jurisdiction concurrent with the district court in all civil cases in which the principal sum claimed does not exceed $200, and of all criminal cases wherein the punishment that may be imposed shall not exceed a fine of $100 or imprisonment not exceeding six months, all violations of police regulations and executive regulations, and any cause or offense wherein jurisdiction hereafter shall have been conferred by local law. Such inferior courts shall hold preliminary investigations in charges of felony and charges of misdemeanor in which the punishment that may be imposed is beyond the jurisdiction granted to the inferior courts by this section, and shall commit offenders to the district court and grant bail in bailable cases. The rules governing said courts and prescribing the duties of inferior judges and inferior court officers, oaths, and bonds, the times and places of holding such courts, the disposition of fines, costs, forfeitures, enforcements of judgments, providing for appeals therefrom to the district court and the disposition and treatment of prisoners shall be as established by law or ordinance in force on the date of enactment of this Act or as may hereafter be established by law or ordinance by the municipal council having jurisdiction.

Act of June 22, 1936, ch. 699, § 32, 49 Stat. 1807.

causes arising under the Constitution, treaties and laws of the United States, regardless of the sum or value of the matter in controversy. It shall have general original jurisdiction in all other causes in the Virgin Islands, exclusive jurisdiction over which is not conferred by this [Act] upon the inferior courts of the Virgin Islands. When it is in the interest of justice to do so the district court may on motion of any party transfer to the district court any action or proceeding brought in an inferior court and the district court shall have jurisdiction to hear and determine such action or proceeding. The district court shall also have appellate jurisdiction to review the judgments and orders of the inferior courts of the Virgin Islands to the extent now or hereafter prescribed by local law.

48 U.S.C. § 1612.[6] The intention of Congress to continue the status of the District Court as a tribunal of original and general jurisdiction is reflected in the Senate Report accompanying the bill, which reviewed the judiciary provisions of the 1954 Revised Organic Act as follows:

> Section 19 vests the judicial power of the Virgin Islands in the District Court of the Virgin Islands and in inferior courts created by local law.
>
> Section 20 provides that the district court shall have the jurisdiction of a district court of the United States, as well as certain local jurisdiction, both original and appellate.
>
> Section 21 provides that the inferior courts shall have jurisdiction, concurrent with the district court, of civil actions in which the matter in controversy does not exceed $500 and in criminal cases in

which the maximum punishment which might be imposed does not exceed a fine of $100 or 6 months imprisonment, or both.

S.Rep.No.1271, 83d Cong., 2d Sess. 11, *reprinted in* [1954] U.S.Code Cong. & Ad. News 2585, 2595. Furthermore, the language of the provisions referred to above was subsequently revised in accordance with the suggestions of our colleague Judge Albert B. Maris set forth in a letter to Senator Hugh Butler, Chairman of the Senate Committee on Interior and Insular Affairs, dated April 19, 1954. Judge Maris suggested, *inter alia;*

> I would, therefore, suggest that sections 21 and 22 [subsequently renumbered] be redrawn, as was done in the case of the Organic Act of Guam, to provide that the district court shall have general original jurisdiction of all cases arising under the local law, jurisdiction over which is not expressly conferred by the act upon the inferior courts. If then, in section 22 the exclusive jurisdiction of the inferior courts is specifically spelled out it will necessarily follow that the district court will have jurisdiction of all other cases of every kind and it will be unnecessary for you to attempt to catalog or describe them. This is particularly important because of the all-embracing jurisdiction of the district court which must include not only all causes of action above the police court level now given by the local law but also all such causes of action which may be created by laws which the legislature may enact in the future.

*Id.* at 21, *reprinted in* [1954] U.S.Code Cong. & Ad.News at 2607.

---

**6.** The jurisdiction of the inferior courts was delineated by the Revised Organic Act, in relevant part, as follows:

> The inferior courts now or hereafter established by local law shall have exclusive original jurisdiction of all civil actions wherein the matter in controversy does not exceed the sum or value of $500, exclusive of interest and costs, all criminal cases wherein the maximum punishment which may be imposed does not exceed a fine of $100 or imprisonment for six months, or both, and all violations of police and executive regulations,

> and they shall have original jurisdiction, concurrently with the district court, of all actions, civil or criminal, jurisdiction of which may hereafter be conferred upon them by local law. Any action or proceeding brought in the district court which is within the jurisdiction of an inferior court may be transferred to such inferior court by the district court in the interest of justice.

48 U.S.C. § 1613. This inferior court jurisdiction has been vested by the Virgin Islands legislature in a "Territorial [formerly Municipal] Court of the Virgin Islands." 4 V.I.C. § 2.

We believe a review of this legislative history is dispositive of the contention that the District Court does not have subject matter jurisdiction. The parties' references to diversity jurisdiction are misplaced. The District Court of the Virgin Islands has no diversity jurisdiction, because the Revised Organic Act does not specifically grant it such jurisdiction. As in the case of the Organic Act of Guam, 48 U.S.C. § 1424(a), construed by the Supreme Court in *Chase Manhattan Bank v. South Acres Development Co.*, 434 U.S. 236, 98 S.Ct. 544, 54 L.Ed.2d 501 (1978) (per curiam), language concerning diversity jurisdiction is "conspicuously absent" from the Revised Organic Act. *Id.* at 237, 98 S.Ct. at 545.

However, contrary to the suggestion of appellants, the District Court's subject matter jurisdiction in this case is not dependent upon whether or not it possesses diversity jurisdiction. The above discussion shows that in contrast to most federal courts, the District Court of the Virgin Islands is not a court of limited jurisdiction. It is not a United States District Court established under Article III of the United States Constitution, but instead is a creation of Congress pursuant to Article IV's grant of congressional power to govern the territories of the United States. Under the Revised Organic Act, Congress has given the District Court of the Virgin Islands, in addition to its federal question jurisdiction, "general original jurisdiction in all other causes in the Virgin Islands, exclusive jurisdiction over which is not conferred by [the Revised Organic Act] upon the inferior courts of the Virgin Islands." 48 U.S.C. § 1612. In that

sense, it is more like a state court of general jurisdiction than a United States district court. *See* 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3508, at 23. Diversity jurisdiction would add nothing to the grant of general jurisdiction contained in the Revised Organic Act.[7] The real question, therefore, is not whether the District Court of the Virgin Islands possesses diversity jurisdiction, but rather whether this case falls within its general original jurisdiction. There is no reason why it does not.

Appellants suggest that the jurisdiction of the District Court in this case cannot be predicated on its grant of general original jurisdiction. First, they contend that the territorial court would not have jurisdiction over this matter. We need not decide whether that is correct, since the District Court has "general original jurisdiction" conferred by the Revised Organic Act, which is not dependent on whether or not the territorial court would have concurrent jurisdiction. Indeed, it is the territorial court which has concurrent jurisdiction with the District Court in some matters, not the reverse. *See* note 6, *supra.*

More generally, appellants seem to suggest that jurisdiction in this case would be improper because of the lack of any nexus between this cause of action and the Virgin Islands. The action was, however, brought under the Virgin Islands wrongful death statute, 5 V.I.C. § 76, which does not limit the cause of action created to cases where the event occurred in the Virgin Islands.

---

**7.** In *Chase Manhattan* the issue of diversity jurisdiction was critical because of a significant difference between the Organic Act of Guam and the Revised Organic Act of the Virgin Islands. Under the Organic Act of Guam, the legislature of Guam, unlike the legislature of the Virgin Islands, has the power to transfer exclusive jurisdiction over certain causes of action to the local courts. In *Chase Manhattan*, the District Court could not rely on its "original jurisdiction," since the legislature had "transferred jurisdiction of all cases arising under the laws of Guam from the District Court to the local courts." 434 U.S. at 237, 98 S.Ct. 545. Therefore, if the District Court were to

have jurisdiction, it must be on the basis of diversity. In contrast, the Virgin Islands legislature cannot limit the "general original jurisdiction" of the District Court. *See Pan American World Airways, Inc. v. Duly Authorized Government of the Virgin Islands*, 459 F.2d 387, 391, 8 V.I. 558, 565 (3d Cir. 1972). The provision of the 1936 Organic Act which would have given the Virgin Islands legislature the same authority as the Guam legislature to transfer exclusive jurisdiction over actions from the District Court to "a Superior Court of the Virgin Islands" was not included in the Revised Organic Act in 1954.

In effect, appellants challenge the relationship of the forum to the cause of action. That relationship vel non may be relevant to questions of personal jurisdiction, choice of law, and forum non conveniens, but is not relevant to the issue of subject matter jurisdiction. "An action to recover damages for a tort is not local but transitory, and can as a general rule be maintained wherever the wrongdoer can be found." *Stewart v. Baltimore & Ohio Railroad Co.*, 168 U.S. 445, 448, 18 S.Ct. 105, 106, 42 L.Ed. 537 (1897). As a court of general original jurisdiction the subject matter jurisdiction of the District Court is limited only by the terms of the Revised Organic Act. The only subject matter limitation contained in that Act concerns cases as to which exclusive jurisdiction has been conferred on the territorial court. 48 U.S.C. § 1612. This case does not fall within that category of cases. *See* 48 U.S.C. § 1613. We therefore affirm the order of the District Court denying the motion to dismiss for lack of subject matter jurisdiction.

## III.

### JURISDICTION OVER THE PERSON

Appellants challenge the District Court's finding of personal jurisdiction on both statutory and constitutional grounds. The Virgin Islands long arm statute, 5 V.I.C. § 4903, was adopted almost verbatim from the Uniform Interstate and International Procedure Act, 13 Unif.L.Ann. § 1.03. It provides, in relevant part:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this territory;

(2) contracting to supply services or things in this territory;

(3) causing tortious injury by an act or omission in this territory;

(4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory....

5 V.I.C. § 4903(a)(1)–(4). The District Court, employing the unusual convention of analyzing jurisdiction from the vantage point of the cross-claim rather than the plaintiffs' claims, found that personal jurisdiction over the manufacturer defendants could be based on both sections 4903(a)(3) and (a)(4), and that exercise of such jurisdiction was constitutional.

In considering whether the District Court's conclusion can be sustained, we must decide whether these provisions of the Virgin Islands long arm statute are coextensive with the outer reaches of the due process clause, a question we left open in *Hendrickson v. Reg O Co.*, 657 F.2d 9, 13 n.3 (3d Cir. 1981). In some states, the legislature has expressly provided that the jurisdiction of the courts of the state extends to the limits of the Constitution. *See, e.g.,* 42 Pa.Const.Stat.Ann. § 5322(b) ("the jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States"). When the statute contains such language, this court can, and has, pretermitted an examination of the precise statutory language, and has instead focused on the due process requirement. *See, e.g., Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587 (3d Cir. 1982); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981) (interpreting New Jersey long arm rule).

The District Court in this case held that it would be guided by the general principle that section 4903 is "intended to extend the personal jurisdiction of the Virgin Islands to the widest constitutional limits"[8] al-

---

**8.** As authority for this proposition, the District Court cited two opinions emanating from the District Court of the Virgin Islands. One of the cases, *Hendrickson v. Reg O Co.*, Civ. No. 1979

though the court also stated, somewhat paradoxically, that "a jurisdictional basis must still lie within the statutory language itself." Joint App. at 5 & 6 n.3. We agree that we cannot gloss over the statutory language in favor of a constitutional interpretation only. If we did so we would be disregarding the carefully crafted language of the various subsections of section 4903. We find no basis to neglect the language which the Virgin Islands legislature. has used in the statute, particularly when this section itself was based on the prodigious effort and meticulous design of the drafters of the Uniform Interstate and International Procedure Act. It may be that the District Court's statement that section 4903 is intended to extend the personal jurisdiction of the Virgin Islands "to the widest constitutional limits" was intended to mean only that those provisions referring to the defendants' contacts with the forum would be interpreted in that manner. We leave that issue for another day because we find other statutory language dispositive.

In support of their motion to dismiss, defendants filed affidavits alleging the absence of any of the traditional bases upon which personal jurisdiction is generally asserted. Bendix and Avco-Lycoming, the component manufacturers, filed affidavits averring that they do not transact business in the Virgin Islands, that Bendix is not licensed to do business there, that they do not maintain any office there, and have no employees there. Avco-Lycoming's affidavit further states that it does not "deliver any goods or services for use or consumption in the territory of the Virgin Islands." The affidavit filed on behalf of Beech, the manufacturer of the aircraft, avers that it manufactures various lines of general aviation aircraft at its plant at or near Wichita, Kansas; that it is not, nor has it ever been, incorporated in or licensed to do business in the Virgin Islands; that it does not manufacture any aircraft or components of aircraft in the Virgin Islands, nor does it own any plant, manufacturing facilities or real property in the Virgin Islands; that it has no officers, directors or employees living or residing or stationed in the Virgin Islands; that it does not sell the aircraft which it manufactures in the Virgin Islands but sells such aircraft only to its dealers and distributors, and that all sales, deliveries and payments which it makes or receives are at Wichita, Kansas, which is where title to all aircraft sold by it is transferred. Finally, it avers that the aircraft involved in this accident, a Beechcraft Queen Air, Model 65–80, was sold by it in 1963 f. o. b. Wichita to Duncan Aviation, Inc. of Tarkio, Missouri, and delivered to the purchaser at Wichita, Kansas.[9]

(D.V.I. May 28, 1980), *aff'd*, 657 F.2d 9 (3d Cir. 1981), can no longer be considered authority for this proposition since, as we noted in the text, on appeal we expressly left that issue open. The other case cited was *Norman's On The Waterfront v. West Indies Corp.*, 10 V.I. 495, 509 (D.V.I.1974), where the court stated "The Virgin Islands long-arm statute has been held to authorize the exercise of personal jurisdiction to the fullest extent permissible under the due process clause. *Jensen v. McInerney*, 299 F.Supp. 1309 (D.C.V.I.1969)." *Jensen* is not authority for the proposition for which it was cited in *Norman's On the Waterfront*. In *Jensen*, the District Court found that defendant's activity fell within the language of three clauses of § 4903(a) of the Virgin Islands long arm statute, and then proceeded to consider whether as thus construed, the statute ran afoul of the due process clause of § 3 of the Revised Organic Act and the Fifth Amendment. The court did not either expressly or by implication make the statement subsequently attributed to it.

9. If our decision were based on the nature and extent of the defendant manufacturers' contacts with the Virgin Islands, we would be obliged to consider whether the evidence elicited supports the District Court's conclusions that Beech "regularly solicits business in the Virgin Islands", "derives substantial revenue from goods used or consumed" there, and that Beech aircraft "are in use in the Virgin Islands." Joint App. at 20–21. Those findings appear to be based on evidence that someone who may have been a Beech distributor was seen in the Virgin Islands (although there is nothing on record to show he was there on Beech's business) and evidence that Beech sent its service manuals and alerts to Valley Air and other operators in the Virgin Islands (although it is not clear that any of such mailings were initiated by Beech). Beech airplanes and parts of all three manufacturers did find their way to the Virgin Islands, although the arrangements or routes by which they did so is unclear. The District Court made no specific findings as to

Turning first to the District Court's finding that jurisdiction over these defendants could be based on their "causing tortious injury by an act or omission in this territory" as provided for in 5 V.I.C. § 4903(a)(3), it is immediately evident that no "act or omission" as these terms are traditionally construed occurred in the Virgin Islands. Neither the aircraft nor its components which were allegedly defective were designed or manufactured in the territory, nor did the defendants repair or inspect them there. The District Court nevertheless held that jurisdiction under section 4903(a)(3) could be sustained on either of two bases. First, the District Court concluded that "the allegations that Beech failed to warn Valley Air of the defective condition of the aircraft constitutes allegations of 'an act or omission in this territory.'" Joint App. at 10. Second, the District Court held that "even without any allegations of negligent conduct by Beech in this territory, the requirements of subsection (a)(3) are met by allegations that elements and conduct which significantly relate to the injury occurred within the territory." *Id.* To justify jurisdiction under the first basis, the District Court focused upon one of plaintiffs' theories of liability, the defendants' continuing failure to warn of the defective condition of their products. It reasoned that since Valley Air's principal place of business was in the Virgin Islands, and since "for purposes of long arm statutes, the location of a manufacturer's breach of its duty to warn occurs at the location of its product's purchaser," Beech's "negligent failure to warn occurred, if at all, in the Virgin Islands." *Id.* at 11.

In providing for the exercise of jurisdiction in claims arising out of tortious injury, the Virgin Islands statute distinguishes between those claims which arise out of defendants' forum related activities, covered by section 4903(a)(3), and those claims which arise out of defendants' activities elsewhere, covered by section 4903(a)(4). *See* 13 Unif.L.Ann. § 1.03 at 468 (Uniform Act Commissioners' Comment that "the regular solicitation of business or the persistent course of conduct required by section 1.03(a)(4) [the counterpart to section 4903(a)(4)] need have no relationship to the act or failure to act that caused the injury"); *Hendrickson v. Reg O Co.*, 657 F.2d at 12. As we have recently noted in *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, at 588 (3d Cir. 1982), when personal jurisdiction is asserted over a nonresident defendant on a claim based on the defendant's forum related activity, the focus must be on the quantum of contacts "with the forum arising out of *that* transaction." When the claim is based on defendant's non-forum related activity, the focus in determining jurisdiction is on the totality of the defendant's activity within the jurisdiction, which must be "continuous and substantial" to meet due process requirements. *Id.*

The thrust of section 4903(a)(3) is directed to obtaining jurisdiction over those persons or entities who make a foray, even a single or isolated foray, into a jurisdiction and injury is caused as a result of that foray. The classic example is that of the non-resident motorist who has caused injury. The District Court's holding that the failure to warn occurs at the place of business of the customer fails to take into account that the decision whether or not to warn would ordinarily be made by the manufacturer at the location where its employ-

---

the activity of Avco-Lycoming and Bendix, but there is evidence that Avco-Lycoming mailed some of its service bulletins to at least one subscriber in the Virgin Islands. There is also evidence in the form of answers to interrogatories filed by Bendix and, inexplicably, not referred to by plaintiffs in their briefs, that Bendix had made sales to Virgin Islands customers of some products unrelated to airplane parts totalling $3,330.24 from 1977 through 1979. Because our decision is based on requirements of the Virgin Islands long arm statute independent of the amount of business transacted, we do not comment on the close question presented by the District Court's findings. We note that plaintiffs' reference to § 4903(a)(1) as an alternative basis for finding jurisdiction does not withstand analysis because it is apparent that their claims do not "aris[e] from" defendants "transacting any business" in the Virgin Islands.

ees are, either at corporate headquarters or at the location where it manufactures or tests its product. It cannot logically be viewed as following the product through its journey in countless jurisdictions. *See Yarbrough v. Elmer Bunker & Associates,* 669 F.2d 614, 616–17 (10th Cir. 1982). Elevation of the "omission" in section 4903(a)(3) to the failure to warn wherever the product happens to have travelled transmutes the essential nature of that section. In holding that jurisdiction can be sustained on the mere allegation that liability is predicated on failure to warn, the District Court improperly and unnecessarily confused the separate issues of personal jurisdiction and liability. *See Walsh v. National Seating Co.,* 411 F.Supp. 564, 570 (D.Mass.1976); *cf. Witt v. Scully,* 539 F.2d 950, 951 (3d Cir. 1976) ("district court erred by confusing substantive legal precepts with jurisdictional ones").[10]

We note that in *Chlebda v. H. E. Fortna and Brother, Inc.,* 609 F.2d 1022 (1st Cir. 1979), the First Circuit rejected a similar claim that jurisdiction could be predicated on the theory that the failure to warn "occurred where the unwarned person resided." *Id.* at 1023. Characterizing this contention as a "somewhat metaphysical" one,

id., the court observed: "It is not to be forgotten that jurisdiction is power, and that originally jurisdiction in personam required presence of the person. While power and presence have become largely symbolic, there must still be some form of submission to the state.... Here the very complaint is that defendant did nothing." *Id.* at 1024 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).[11]

Finally, we believe the interpretation adopted by the District Court would dangerously trench upon the constitutional prohibition against assertion of jurisdiction where the defendant has not purposefully availed itself of the privilege of conducting activity within the forum. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In fact, under this theory, a defendant's "amenability to suit would travel with the chattel," an approach the Supreme Court has firmly rejected. *Id.* at 296, 100 S.Ct. at 566. Thus we conclude that the mere allegation of a failure to warn does not, without more, show an "act or omission in this territory." [12]

As its second basis for finding that the defendants caused tortious injury "by an

---

**10.** As the court noted in *Walsh v. National Seating Co.,* 411 F.Supp. 564, 570 (D.Mass. 1976), "Since almost every products liability case has a potential issue of failure to warn, grounding jurisdiction solely on allegation of such an omission might remove any limitation upon a state's assertion of personal jurisdiction and again be beyond 'traditional notions of fair play and substantial justice.'"

**11.** The two cases relied upon by the District Court for its grounding of jurisdiction on the alleged failure to warn are unsupportive. In *Walsh v. National Seating Co.,* 411 F.Supp. 564, 570–71 (D.Mass.1976), the court held that, accepting arguendo that jurisdiction could be based solely on the failure to warn at the customer's place of business, the record did not support the conclusion that the customer's place of business was located in the forum. However, the court expressed considerable doubt as to whether the mere failure to warn could provide a sufficient jurisdictional basis.

The other case relied upon by the District Court, *Higginbotham v. United Iron and Metal Co.,* 228 F.Supp. 513 (W.D.Mo.1964), is also distinguishable. In that case, the allegedly de-

fective drill steel was sold directly by the defendant to the plaintiff's decedent, and was delivered by the defendant to the decedent in the forum state. The court held that even assuming the sale had been completed outside the forum, "the duty to warn nevertheless continued at least until actual delivery of the steel by defendant in [the forum state]," and could therefore provide the basis for jurisdiction under a statute which required the commission of a tort, in whole or in part, in the forum. In contrast, in this case the record establishes that Beech was not responsible for the sale or delivery of the plane at issue to Valley Air.

**12.** We need not decide whether jurisdiction would be proper under a different fact pattern showing a series of communications and bulletins, including warnings and service alerts, which was purposefully initiated by the manufacturer. We note only that such facts might be considered to demonstrate a "persistent course of conduct" within § 4903(a)(4), which does not require "an act or omission in this territory".

act or omission within this territory" within the meaning of section 4903(a)(3), the District Court relied on two Illinois cases, *Connelly v. Uniroyal, Inc.*, 55 Ill.App.3d 530, 13 Ill.Dec. 162, 370 N.E.2d 1189 (Ill.App.Ct. 1977), *aff'd in part, rev'd in part*, 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155 (Ill. 1979), *cert. denied*, 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980) and *Braband v. Beech Aircraft Corp.*, 51 Ill.App.3d 296, 9 Ill.Dec. 684, 367 N.E.2d 118 (Ill.App.Ct. 1977), *aff'd*, 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (Ill.1978), *cert. denied*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979), which, according to .the District Court, stand for "the proposition that a long arm statute which requires that an act occur within the jurisdiction may be satisfied if a defective product was placed in the stream of commerce and thereafter the product and key aspects of the tort had significant contacts with the jurisdiction." Joint App. at 12. We believe this theory cannot be used to sustain jurisdiction under section 4903(a)(3). In contrast to the separate provisions of sections 4903(a)(3) and (a)(4), the Illinois statute construed in those cases provided for jurisdiction "as to any cause of action arising from the ... commission of a tortious act within this State," Ill.Rev.Stat. ch. 110, § 17(1)(b), and did not distinguish between claims arising from forum related activity and those that do not. As the Commissioners' Comment notes, "Section 1.03(a)(3) may have a narrower range of application than statutes [citing Illinois as an illustration] which base jurisdiction upon the commission of a tortious act within the state." 13 Unif.L.Ann. § 1.03 at 468. The District Court's adoption of the "stream of commerce" theory within section (a)(3) blurs the distinction between sections (a)(3) and (a)(4). Whatever support the "stream of commerce" theory may find in logic and fairness, it cannot be reasonably viewed as creating a forum related claim, one arising out of defendants' activity within the jurisdiction. Thus, we conclude that jurisdiction in this case cannot be based on section 4903(a)(3).

Turning then to section 4903(a)(4), which covers non-forum related activity, the situation pertinent here, jurisdiction can be predicated only on finding both that the defendant has "*caus[ed] tortious injury in this territory* by an act or omission outside this territory" *and* "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory...." (emphasis added).

The focus of the discovery and of the submission of the parties before this court has been on the latter requirement directed to the amount and nature of the contacts of each of the three defendants with the forum. In *Hendrickson v. Reg O Co.*, 657 F.2d at 12, we held that the "defendant's activities, including a course of conduct, soliciting business, and deriving revenue from goods being used in the territory, may be sufficient cumulatively to establish a jurisdictional presence, even though no single element would suffice." Thus, appellants have stressed the paucity of their contacts with the Virgin Islands and have argued that the facts do not support the District Court's findings. If this issue were necessary to our decision, we would be required to consider whether the rejection by the Court in *World-Wide Volkswagen* of the "stream of commerce" theory as a basis for finding personal jurisdiction over a nonresident distributor and dealer is equally applicable to defendants such as those before us who are manufacturers of products which travel in the "stream of commerce". *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). We need not reach that issue in this case. We believe that section 4903(a)(4) is inapplicable because there is no basis for finding any "injury in this territory", as required by that section.

The language of section 4903(a)(3) in this regard is in distinct contrast with that of section 4903(a)(4). As the Comment of the Commissioners states: "Section 1.03(a)(3) applies when the tortious act or omission occurs in the state *even though the resulting injury occurs elsewhere....* Section

1.03(a)(4) authorizes the exercise of jurisdiction when the tortious act or omission takes place without the state *but the injury occurs within the state* and there is some other reasonable connection between the state and the defendant." 13 Unif.L.Ann. § 1.03 at 468 (emphasis added).[13]

The District Court apparently recognized that as to the claims on behalf of the passengers and pilot who were killed outside the Virgin Islands and who had not resided in the Virgin Islands, there was no basis for finding any "injury in this territory" and therefore section 4903(a)(4) was inapplicable. According to the amended complaint filed in the *Carty* action, three of the personal representatives who brought these suits as plaintiffs are citizens and residents of the Netherlands Antilles, and the fourth is a citizen and resident of Canada. The personal representative filing the *Lloyd* action, appointed in Anguilla, has conceded that neither she nor the decedent were citizens of or resided in the Virgin Islands. The *Carty* complaint does not specify the residence of the decedents, but when the personal representatives sought to establish diversity they asserted, without contradiction, that none of the decedents was a resident of the Virgin Islands. *See* Brief of Appellees Carty, et al., at 9. Thus, as to the original plaintiffs, no basis exists for finding any "injury in this territory," and no finding to the contrary has been made by the District Court. Therefore, regardless of our conclusion with regard to claims of the

cross-claimant Valley Air, the plaintiffs' claims must be dismissed. The statutory language precludes bootstrapping their claims onto those of the cross-claimant, since it provides for the exercise of jurisdiction "as to a claim for relief arising from [defendant's causation of] . . . injury in this territory." Even if defendants caused injury to Valley Air in the territory, plaintiffs' claims for relief do not arise therefrom, and thus do not fall within section 4903(a)(4).

In its discussion of jurisdiction on the cross-claim filed by Valley Air,[14] the District Court recognized that section 4903(a)(4) requires that there be "injury in this territory." In finding such injury, the court found that the Virgin Islands was Valley Air's principal place of business, that "[a]s to commercial injuries . . . the situs of a plaintiff's economic injury is its principal place of business" and that therefore "the immediate economic loss to Valley Air resulting from the loss of its plane and its president, Clayton Lloyd, signifies that the Virgin Islands is the situs of Valley Air's injuries." Joint App. at 16, 18, 19.

Even if there were a distinction for purposes of jurisdiction between "commercial" and other injuries caused by tortious conduct, an issue we do not decide in this case,[15] the only claim made by Valley Air was for property damage as a result of the loss of its airplane. Valley Air's answer to the *Carty* amended complaint contained two cross-claims interposed against Beech, Avco-Lycoming and Bendix, the first re-

**13.** The Oklahoma legislature, in adopting the Uniform Act, restricted the scope of section (a)(3) by inserting a requirement that the tortious injury upon which that section is based must also have occurred in Oklahoma. *See* 12 Okla.Stat. § 1701.03(a)(3) (providing long arm jurisdiction over persons "causing tortious injury in this state by an act or omission in this state").

**14.** Inexplicably, the District Court stated that it would "analyze the personal jurisdiction question from the perspective of Beech's motion to dismiss Valley Air's Amended Cross-claim for damages" since "its resolution determines the outcome of the remaining personal jurisdiction motions." Joint App. at 6. While it may be correct that "because this motion presents the strongest case for a finding of jurisdiction [be-

cause of Valley Air's contacts with the Virgin Islands], a grant of the motion to dismiss signifies that the Court lacks a basis for exercising personal jurisdiction in the remaining claims," *id.*, the converse is obviously not true.

**15.** All of the cases cited by the District Court for the proposition that injury occurs at the plaintiff's principal place of business involved injury such as loss of profits rather than property damage, as here. Indeed it is questionable whether two of the cases cited, *Engine Specialties, Inc. v. Bombardier Ltd.*, 454 F.2d 527 (1st Cir. 1972), and *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975), held that the place of injury even for commercial injury is at the plaintiff's principal place of business.

questing indemnity from the other defendants and the second requesting damages for the value of the airplane which was lost in the accident. Specifically, paragraph 23 states:

By reason of the negligence, breach of warranty or other breaches of duty on the part of defendants BEECH, AVCO–LYCOMING and BENDIX, Valley Air Service has sustained damages in the sum of $75,000.00 representing the fair value of the aircraft as aforesaid.

In its prayer for judgment, Valley Air requested indemnification and judgment against those defendants for the sum of $75,000 with interest and costs and a reasonable attorney's fee. We find no basis in the pleadings to consider Valley Air's claim as for anything other than the loss of its plane.[16]

Those courts which have had occasion to consider where the "injury" has occurred for a claim for damage to property owned by a business (as distinguished from economic loss, such as a claim of loss of profits) have held that the place of the "injury" was the place of the occurrence of the event. The District Court's conclusion that there was "injury" to Valley Air within the Virgin Islands because that was where its principal place of business was fails to distinguish between the possible "consequences" to a business and the "legal injury". See American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 435 (2d Cir. 1971) ("it may be that there were financial 'consequences' to plaintiffs here in New York, although the legal 'injury' occurred elsewhere.")

In Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300 (2d Cir. 1968), the Second Circuit held that in a suit by a New York corporation for the tort of conversion, which occurred in New Orleans, the "injury" occurred in New Orleans where the conversion took place, not in New York. It followed that jurisdiction could not be grounded on the provision of the New York long arm statute which required, inter alia, tortious acts committed outside the state causing injury within the state. The Second Circuit stated:

Zoellner lost its scrap metal in New Orleans. The process of reasoning by which Zoellner seeks to convert this New Orleans injury into an injury within New York defies restatement. However, even if it is assumed that some injury in New York flowed from the New Orleans injury, jurisdiction would be lacking. Section 302(a)(3) is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state. See Black v. Oberle Rentals, Inc., 55 Misc.2d 398, 285 N.Y.S.2d 226 (1967).

396 F.2d at 303. Accord, Londa Manufacturing Co. v. Saturn Rings, Inc., 503 F.Supp. 52, 55 (W.D.Okla.1980) ("The economic harm suffered by plaintiff in this forum will not support jurisdiction under [the counterpart of (a)(4)], as plaintiff argues, because it is the tortious injury, not any economic harm flowing from it, which is required by the statute to be raised in this state. The place where economic harm is suffered is not determinative.")

The Oberle Rentals case cited by the Second Circuit presented an issue somewhat analogous to that before us. There, New York domiciled plaintiffs were involved in an accident in Massachusetts, allegedly caused by defects of a part of a trailer. In holding that the trailer manufacturer could not be sued in New York because it had not caused "injury" in New York, the court

---

**16.** The statement in the District Court's opinion referring to "the immediate economic loss to Valley Air resulting from the loss of its ... president, Clayton Lloyd", implies that Valley Air would have a cognizable legal claim for the loss of its president. In view of the identity between Valley Air, a sole proprietorship owned by Clayton Lloyd, and Clayton Lloyd himself, there would be no legal basis for a suit by Valley Air for the loss of its president. The appropriate party to sue for injury as a result of the death of the sole proprietor is defined by the Virgin Islands wrongful death statute and is limited to the personal representative of that individual. See 5 V.I.C. § 76. It is, of course, that personal representative who brought such a suit, and it is that suit which is before us.

construed the statutory reference to the place of injury to signify the place where the original injury was imparted, rather than the place of the resultant damage. 285 N.Y.S.2d at 229.

In *Norair Engineering Associates, Inc. v. Noland Co.*, 365 F.Supp. 740 (D.D.C.1973), the court also rejected a claim that jurisdiction could be based on the District of Columbia's counterpart of (a)(4), also derived from the Uniform Act. The case involved a suit by local businesses against several foreign corporations seeking damages for allegedly defective steel tubing used in a housing project in West Virginia. In dismissing the action, the court stated:

> Here, plaintiffs seek to establish the necessary nexus with the District of Columbia by asserting that the injury to them occurred when they had to borrow money and reach into the reserves of their organizations to replace the faulty tubing. Since plaintiffs' principal place of business is in the District, and the funds borrowed were from a District institution, plaintiffs claim that the injury to them occurred in the District of Columbia. Apparently plaintiffs rely on the wording "tortious injury" in the long-arm statute to indicate that the injury can occur in a locale other than that of the tort. In light of the present facts, the Court will not adopt such an interpretation. The purpose of § 423(a)(4) is to insure that a District of Columbia court would be able to exercise jurisdiction where a foreign manufacturer's product failed and caused injury in the District.... That is not the case here.

*Id.* at 743. *See also Aiken v. Lustine Chevrolet, Inc.*, 392 F.Supp. 883, 886 (D.D.C. 1975).

■ Thus, we hold that when a commercial entity sues for tortious injury to its physical property, the "injury" takes place for jurisdictional purposes where the property has been damaged. Therefore we need not decide whether the District Court's finding that Valley Air's principal place of business was in the Virgin Islands, a finding vigorously contested by defendants, was

clearly erroneous. We do note that the District Court appears to have given no consideration to the fact that Valley Air was a sole proprietorship of Clayton Lloyd. Since "a sole proprietorship has no legal existence apart from its owner", *In Re Grand Jury Empanelled February 14, 1978 (Colucci)*, 597 F.2d 851, 859 (3d Cir. 1979), there would be a conceptual difficulty in separation of Valley Air's place of business from that of Clayton Lloyd, with whom it was legally identical.

■ To recapitulate, we find that personal jurisdiction over the three manufacturer defendants in the Virgin Islands cannot be sustained under section 4903(a)(3) because there was no "act or omission within this territory" by the defendants as required under that section, and cannot be sustained under section 4903(a)(4) because there was no "tortious injury in this territory" as required under that section.

## IV.

### CONCLUSION

We are of course cognizant that dismissal of plaintiffs' complaints against these manufacturers on jurisdictional grounds at this time may cause plaintiffs difficulty in maintaining their suits elsewhere. That unfortunate result is a consequence of plaintiffs' selection of the Virgin Islands as the forum not-withstanding the absence of any relationship between them or the accident and the forum. Plaintiffs' choice of the Virgin Islands was apparently prompted by the desire to sue the manufacturers and Valley Air in one action. However, promptly after the complaints were filed, they were put on notice that the defendant manufacturers alleged that their relationship with the Virgin Islands was tenuous. The District Court's certification of these issues for immediate appeal has saved plaintiffs the considerable effort and expense of trying the merits in a jurisdiction ultimately found to be improper.

The *Carty* plaintiffs filed what appears to have been a protective action in the United States District Court for the Eastern Dis-

trict of Pennsylvania. *See* note 1, *supra.* The record does not disclose whether the *Lloyd* action was similarly protected by suit elsewhere. The statute recently enacted by Congress which permits transfer to cure want of jurisdiction may be unavailing to these plaintiffs.[17] That is an issue that can be explored by the District Court in the first instance if an appropriate motion is filed.

For the foregoing reasons we will reverse the order of the District Court denying the motions of defendants Beech, Avco-Lycoming and Bendix to dismiss and remand this case to the District Court for entry of an appropriate judgment.

---

**17.** The Federal Courts Improvement Act of 1982, Pub.L.No.97–164, § 301, 96 Stat. 25, contains the following provision, which will hereinafter be 28 U.S.C. § 1631:

> **§ 1631. Transfer to cure want of jurisdiction**
> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

There seems to be no equitable reason why such a provision would not be effective on enactment, but it appears that the entire statute of which it is a part becomes effective on October 1, 1982. *See* § 402. The parties have not had the opportunity to brief this question and we leave it to the District Court to consider whether, if applicable, transfer would be "in the interest of justice."