**Jesse A. BRAMLETT and Gertrude R. Bramlett, Plaintiffs,**

v.

**ARTHUR MURRAY, INCORPORATED, a corporation, Defendant.**

**Civ. A. No. 4716.**

United States District Court
D. South Carolina,
Greenville Division.

Feb. 1, 1966.

Rodney A. Culbertson, Greenville, S. C., for plaintiff.

Rufus M. Ward, Spartanburg, S. C., Michael G. Plumides, Plumides & Plumides, Charlotte, N. C., for defendant.

SIMONS, District Judge.

Defendant Arthur Murray, Inc. has appeared specially to move to quash the attempted service of process on it, and to dismiss the action for lack of jurisdiction upon grounds that: (1) Defendant is a corporation organized under the laws of the State of Delaware, and is not domesticated in the state of South Carolina; (2) Defendant is not now, nor has it ever been, doing business in South Carolina so as to make it amenable to the jurisdiction of this court; and (3) The attempted service under Section 10–424 or 12–23.14 of the Code of Laws of South Carolina for 1962 is invalid, null and void, and defendant has never been properly served with process in this action.

Plaintiff contends that, under the terms of the agreements with its licensees or franchise dealers throughout South Carolina and the whole of the United States, defendant has substantial contacts with the state of South Carolina, and is doing business in South Carolina by virtue of its control and supervision over its licensees.

Plaintiffs, husband and wife, allege in their complaint that they enrolled with defendant through its school of dance in Greenville and its representatives and agents operating therein for a lifetime membership consisting of some 700 hours of dancing lessons by competent and supervised instructors of Arthur Murray, Inc., at a cost of $7,217.00 in May 1959; that they thereafter paid an additional $217.00; that defendant failed to maintain a proper studio in the City of Greenville by operating without a manager and with improperly trained instructors; and further that defendant closed its Greenville studio in November 1962 and has failed to maintain any studio since that date and has failed to provide plaintiffs the benefits to which they are entitled under their lifetime membership. Plaintiffs seek both actual and punitive damages.

Complaint was originally filed in the Greenville County Court, and thereafter removed to this court by defendant's filing its Petition and Bond for Removal on July 13, 1964.

Plaintiffs are residents and citizens of the State of South Carolina, and defendant is a Delaware Corporation having its principal place of business in some state other than South Carolina. The matter in controversy exceeds $10,000, therefore this court does have jurisdiction of the suit if the attempted service of process is valid. 28 U.S.C.A. § 1332.

Plaintiff herein served the summons and complaint upon defendant by service upon the Secretary of State of South Carolina, pursuant to Section 10–424 [1]

1. § 10–424 provides in part: "If the suit be against a foreign corporation other than a foreign insurance company the summons and any other legal paper may be served by delivering a copy to any officer, agent or employee of the corporation found at the place within this State designated by the stipulation or declaration filed by the corporation pursuant to § 12–721. But if such foreign corporation transacts business in this State without complying with that section such service may be made by leaving a copy of the paper with a fee of one dollar in the hands of the Secretary of State or in his office, and such service shall be

or 12–23.14 [2] of the Code of Laws for South Carolina, 1962. Such substituted service is provided for under Rule 4(d) (7) of the Federal Rules of Civil Procedure.

Oral arguments by counsel for the parties were heard in Greenville, S. C., and written briefs were thereafter submitted. In addition, the court has considered the affidavit of Paul M. Coonrod, Assistant Secretary and General Counsel for defendant, and a specimen copy of the agreement between Arthur Murray, Inc. and its franchise dealers. At the time of the hearing counsel for the parties agreed that the sole question before the court for purposes of the motion to quash is whether defendant was "doing business" in South Carolina at the time of the commencement of this action, so as to validate the substituted service of process made pursuant to state statutory provisions, and vest this court with jurisdiction. It was further agreed by counsel that the attempted service would be valid if the court determines that defendant has the requisite "minimum contacts" with the State of South Carolina.

Under the terms of its franchise agreements, defendant corporation maintains strict controls and restrictions over its dealers. These provisions quite naturally are beneficial to both defendant [referred to sometimes hereinafter as licensor], and its franchise dealers or licensees, [hereinafter referred to as licensees]; however, it is readily apparent that defendant seeks principally to protect its own interests, image and prestige. Some of the more pertinent provisions contained in the franchise agreements are: (1) Licensee agrees to conduct a dancing school in accordance with the methods of teaching furnished by licensor, and licensor furnishes such supervision, advice and assistance as it deems necessary for proper conduct of such schools; (2) Licensor designates name of each school; (3) Licensor originates promotion and publicity material which must be used and paid for by licensee; (4) Licensee is required to comply with general operational policies established by licensor including minimum hourly tuition rates and methods of instruction; (5) Applications to licensee for employment as dancing instructors, interviewers, supervisors, or for other positions must be submitted to licensor for approval prior to employment; prospective employees must pass a written examination prepared by licensor and given under its supervision or direction; further, any employee found objectionable by licensor shall be dismissed, with or without cause, upon request by licensor; (6) Licensee must require all employees, as a prerequisite to their employment, to sign an employment contract in the form prescribed by licensor; (7) Licensee agrees not to employ any

deemed sufficient service and shall have like force and effect in all respects as service upon citizens of this State found within its limits if notice of such service and a copy of the paper served are forthwith sent by registered mail by the plaintiff to the defendant foreign corporation and the defendant's return receipt and the plaintiff's affidavit of compliance therewith are filed in the cause and submitted to the court from which such process or other paper issued."

2. § 12–23.14 provides in part: "(a) Every foreign corporation which is not authorized to do business in this State shall, by doing in this State, either itself or through an agent, any business, including any business for which authority need not be obtained as provided by § 12–23.1, be deemed to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising out of or in connection with the doing of any business in this State.

"(b) Service of such process shall be made by delivering to and leaving with the Secretary of State, or with any person designated by him to receive such service, duplicate copies of such process, notice, or demand. The Secretary of State shall thereupon immediately cause one of such copies to be forwarded by registered mail, addressed to the corporation, either at its registered office in the jurisdiction of its incorporation, its principal place of business in such jurisdiction, or at the last address of such foreign corporation known to the plaintiff, in that order."

dancing instructor unless such instructor has had at least one hundred hours of private instruction in dancing at an Arthur Murray Dancing School, or has attended a Teacher's Training Class at an Arthur Murray Dance Studio for at least 200 hours; further, licensee agrees to pay dancing instructors, interviewers and supervisors approximately the same rates of pay as are maintained at the New York Studio owned or supervised by licensor; (8) Licensee agrees that he will require his instructors and supervisors to attend classes in latest Arthur Murray methods of teaching and dance steps when licensor sends its representatives to licensee's place of business to conduct such classes; and licensee agrees to reimburse licensor to the extent of not more than $500.00 in any calendar year for the cost of sending such representatives to licensee's studio; (9) Licensee further agrees to attend or send a representative for a week at least once each year to a seminar in New York City conducted by licensor to learn the latest Arthur Murray Dance Steps.

In addition licensor requires that each licensee submit all proposed advertising of any nature to it for approval prior to its use, and that licensor shall serve as arbiter of any advertising conflicts among licensees and render binding judgments upon parties.

Furthermore, each licensee is required: To use proper accounting methods and to employ such systems as licensor may direct; to procure and keep in force a $10/20,000.00 personal injury and a $1000 property damage insurance policy in which both licensee and licensor are named as assureds; to deposit in escrow with licensor up to $449.20 to protect and indemnify it from all claims, and to be used as a fund out of which refunds may be made to pupils for unused lessons and Licensee is required to honor the unused portion of paid courses of pupils enrolled in any other Arthur Murray Dancing School, and to receive payment in the amount of $2.50 per hour for said lessons to be paid by enrolling school or by licensor, at licensor's option.

And finally, licensee must obtain approval from licensor of the location, layout and decoration of any school; and licensor has the right to hire an interior decorator to decorate any studio, if licensee fails to comply, and licensee must bear all expenses including the purchase of furniture; licensee must play the kind of music and obtain the type of music system as licensor may direct; and should gross income of licensee for first year of operation be less than $15,000 and under certain other conditions, licensor reserves the right to direct the advertising for licensee until certain gross receipts are realized.

Plaintiffs contend that such controls by defendant over its licensees in this State constitute the necessary "minimum contacts" with South Carolina to vest jurisdiction in this court, and to validate the substituted service of process as provided for under South Carolina statutory Law and Rule 4(d)(7) of the Federal Rules, citing Shealy v. Challenger Manufacturing Co., 304 F.2d 102 [4th Cir. 1962; Thompson v. Ford Motor Company, 200 S.C. 393, 21 S.E.2d 34 [1942]; Boney v. Trans-state Dredging Co., 237 S.C. 54, 115 S.E.2d 508 [1960]; and Szantay v. Beech Aircraft, 237 F.Supp. 393 [D.C.S.C.1965], aff. 349 F.2d 60 [4th Cir. 1965].

In each of these cases the court retained jurisdiction on ground that various non-domesticated manufacturers were "doing business" in South Carolina through supervision and control of its franchised dealers therein or had sufficient contacts with the forum through its own activities or that of its agents.

■ As was stated by Chief Judge Haynsworth of the Fourth Circuit in Shealy v. Challenger Manufacturing Co., supra, federal courts are bound by South Carolina's interpretation of her service of process statutes, the language of such statutes is to be given a broad construction when the question arises relative to

the jurisdiction of its courts; and as interpreted by the South Carolina Supreme Court such statutes approach the ultimate constitutional bounds.

■ The early restrictive concepts of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, have gradually evolved into the more modern philosophy, as enunciated in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [1945], that the question of jurisdiction of foreign corporations in state or federal courts is decided by "traditional notions of fair play and substantial justice." Such traditional notions are adequately met if a defendant has "minimum contacts" with the State of South Carolina, and if it would be no more unfair to defendant to require it to defend the action in South Carolina than it would be to plaintiffs to require them to prosecute their action in some other state. Shealy v. Challenger, supra.

■ In view of these modern liberal concepts concerning jurisdiction of state and federal courts over foreign corporations, and under the precedents of prior decisions of both state and federal courts cited herein by plaintiffs to sustain jurisdiction of this court over instant suit. I find that the minimum contacts necessary to satisfy the due process requirements of the Fourteenth Amendment to the United States Constitution are more than adequately met by the facts in this case. The broad supervision maintained by defendant over its South Carolina franchise dealers, and the stringent controls exercised by it through its licensing agreements over the routine operations of its licensee studios is more than sufficient for this court to determine that Arthur Murray, Inc., is actually present and doing business in South Carolina. Defendant seeking to exploit commercial success of its dance steps and methods of dance instruction in South Carolina while at the same time attempting to maintain its image, reputation and prestige has retained such close control over its licensee studios that said studios are practically speaking but a branch operation of the Delaware corporation. Defendant is selling its products in this state through its franchise dealers just as automobile or airplane manufacturers are distrbuting their products through franchise dealers in the state.

■ Defendant contends that, notwithstanding the stringent provisions contained in its contracts with its franchise dealers, this case may be distinguished from the cases cited by plaintiffs in support of their position, in view of the fact that no representative of defendant has ever come into the state to supervise any activity of its franchise dealers. However, if adequate "minimum contacts" with this state exist, a foreign corporation is not required to have agents or representatives personally operating within the state. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 [1957]; Travelers Health Assn. v. Com. of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L. Ed. 1154 [1950]; Moore's Federal Practice, Vol. 2, Sec. 4.25, pp. 1172 et seq.

Furthermore, it may well develop upon trial that defendant's franchise dealer in Greenville was the agent of defendant during the period of time pertinent to this suit. This question is not before the court at this stage inasmuch as substituted service of process has been made upon the Secretary of State of South Carolina and not upon the franchise dealer as the purported agent of defendant.

■ In support of its position defendant cites DeSanta v. Nehi Corporation, 81 F.Supp. 637 [D.C.N.Y.1948], wherein the court determined under the facts of that case that the defendant, a Delaware Corporation having its principal place of business in Georgia, did not transact business within the State of New York, nor was service made on a managing agent of the defendant so as to subject it to the jurisdiction of the court. Suffice it to say that each case depends upon its particular facts and the application of law of the forum state, and no serious attempt can be made to reconcile the myriad of decisions con-

struing and determining what constitutes "doing business" within a particular state for jurisdictional purposes. The facts in the *Nehi* case may be easily distinguished from the facts in the subject case, however, no useful purpose would be served by setting forth those distinctions. It is noted however that in Kearns v. Seven-up Company, 32 F.R.D. 238 [D. C.Pa.1961], a similar factual situation as existed in DeSanta v. Nehi Corporation, supra, was presented to the court and resulted in a determination that the Seven-up Company, a Missouri Corporation with its principal place of business in Wisconsin, was "doing business" in the State of Pennsylvania sufficiently to vest the Pennsylvania court with jurisdiction pursuant to substituted service on the Secretary of the Commonwealth of Pennsylvania.

It is also noted that the decision in the *Nehi* case was rendered prior to some of the Supreme Court pronouncements such as McGee v. International Life Insurance Co., supra, and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 [1958], which have tended to broaden the more liberal rules relating to jurisdiction over foreign corporations as first enunciated in *International Shoe,* supra.

 Defendant finally contends that such elements of control as are reserved by Arthur Murray, Inc. in its franchise agreements with various persons in the operation of ballroom dancing studios are reserved solely in order to protect its tradename and trademark, and not to enable it to exert direct supervisory control over the businesses of its licensees, citing Morse-Starrett Products Co. v. Steccone, 86 F.Supp. 796 [D.C.Cal. 1949]. The court is aware of the well established principle that the owner of a trademark must retain some control over the nature and quality of his product and over the activities of his licensees for it to retain his rights in the trademark and in order to maintain the sec-

ondary meaning of the mark. Susser v. Carvel Corporation, 206 F.Supp. 636 [1962]; E I. DuPont deNemours & Co. v. Celanese Corporation, 167 F.2d 484, 35 CCPA 1061, 3 A.L.R.2d 1213 [1948]. However, it does not follow that, if such controls exacted by a foreign corporation are sufficient to provide the required minimum contacts with the forum state, jurisdiction of said state and federal courts may not be invoked. Defendant fails to cite any authority sustaining such a proposition.

In accordance with the foregoing factual findings and principles of law, the court is of the opinion that defendant Arthur Murray, Inc., maintains such controls over its franchise dealers as to constitute the "minimum contacts" required to validate plaintiffs' substituted service of process upon it through the Secretary of State of South Carolina. The mere fact that defendant has not considered it necessary to send representatives to South Carolina to insure that its franchise dealers are complying with all the provisions of its licensing agreements fails to negate the fact that the controls embodied in the agreements are legally valid and enforceable; and are being complied with by its franchise dealers.

As previously stated herein the ultimate question of defendant's liability for plaintiffs' alleged wrongs are not before the court at this time. However, it cannot seriously be argued, in my opinion, that it would be so unfair to this defendant to require it to defend this action in South Carolina that it would offend "traditional notions of fair play and substantial justice". Indeed it would be more unjust in this case to require plaintiffs to prosecute their action in the State of New York. It is, therefore,

Ordered that defendant's motion to quash service of process upon it and to dismiss the action for lack of jurisdiction be, and it hereby is, denied.

It is so ordered.