**FRANCIS A. DICKSON and THERMAC CORPORATION, LTD., Plaintiffs**

**v.**

**THE HERTZ CORPORATION, Defendant**

Civil No. 80-269

District Court of the Virgin Islands

Div. of St. Croix

March 16, 1983

Todd H. Newman, Esq. (Nichols & Newman), Christiansted, St. Croix, V.I., *for plaintiffs*

RICHARD D. KEELING, ESQ., Christiansted, St. Croix, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

This case is before the Court on the motion of defendant to dismiss the complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2), or in the alternative, to dismiss for inconvenient forum. 5 V.I.C. § 4905. The issue presented is whether defendant's contacts with the Virgin Islands are sufficient to make it amenable to suit here for a claim which admittedly "arose" in a foreign forum.

## I. INTRODUCTION

The above captioned action arose from an accident which occurred at defendant's place of business at the Miami International Airport on October 21, 1979. Plaintiff Dickson is a resident of the Virgin Islands and plaintiff Thermac Construction, Ltd., is a Virgin Islands corporation with its principal place of business also located in the Virgin Islands. Defendant Hertz Corporation is organized under the laws of Delaware and maintains a place of business in Miami, Florida. The record reveals that while defendant Hertz Corporation is not itself qualified to do business in the Virgin Islands in accordance with Title 13 of the Virgin Islands Code, it maintains a licensing agreement with a Virgin Islands Corporation, Preferred Rentals, Inc., which does business in St. Croix, Virgin Islands, under the "Hertz Rent A Car" trade name. In addition, a Puerto Rico corporation, Puerto Ricancars, Inc., which is qualified to do business in the Virgin Islands, conducts operations in St. Thomas, Virgin Islands, also under the registered "Hertz" trade name.

Plaintiff Dickson alleges that he was injured as a result of the defendant's failure to properly maintain its Miami Airport parking lot. Plaintiff Thermac Construction alleges that as a result of Mr. Dickson's injuries it suffered a loss of business profits.

The question raised by the present motion is whether the Court may bring this nonresident defendant within the reach of this jurisdiction for purposes of adjudicating *this* claim. Plaintiffs essentially offer two alternative theories upon which in personam jurisdiction may rest: (1) that defendant may be reached in accordance with certain provisions of the Virgin Islands long-arm statute, 5 V.I.C. § 4903;[1] or (2) that defendant, by virtue of an agency and/or corporate-

---

[1] The long-arm statute is adopted (with one minor variation) from the Uniform Inter-

parent relationship with the two Hertz rental agencies conducting business in the territory, is in fact "present" here for jurisdictional purposes and thus amenable to suit regardless of where the activities giving rise to the "claim for relief" occurred. Each of these theories will be discussed in turn.

## II. JURISDICTION UNDER THE LONG-ARM STATUTE

### (A) 'Transacting Any Business'

■ ■ To the extent that plaintiffs seek to invoke jurisdiction based upon § 4903(a)(1), they face an obvious and insurmountable obstacle, namely that their "claim for relief" does not in whole or in part "arise" out of defendant's business transactions in the Virgin Islands within the meaning of subsection (b) of the statute. Under our long-arm statute, the "initial determination that must be made is whether the claim . . . which is being pursued arises from the defendant's forum related activities . . . [T]he court must determine whether there are enough contacts arising out of *that* transaction in order to justify the assertion of jurisdiction over the out-of-state defendant." Reliance Steel Products Company v. Watson, Ess, Marshall and Enggas, 675 F.2d 587, 588 (3rd Cir. 1982) (construing Pennsylvania long-arm statute). In the present case, the alleged failure of defendant to properly maintain its property occurred entirely within the state of Florida. Thus even assuming that defendant's contacts with the Virgin Islands *were* sufficient to confer jurisdiction on the basis of subsection (a)(1), plaintiffs have failed to demonstrate the requisite causal connection between those contacts and the acts or omissions which form the basis of this law-

---

state and International Procedure Act. 13 U.L.A. § 1.03 (1980). It reads as follows:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
  (1) transacting any business in this territory;
  (2) contracting to supply services or things in this territory;
  (3) causing tortious injury by an act or omission in this territory;
  (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
  (5) having an interest in, using, or possessing real property in this territory; or
  (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

suit. See, e.g., Hoster v. Monongahela Steel Corp., 492 F.Supp. 1249 (D. Okl. 1980) (construing Uniform Act); Defour v. Smith and Hamer, Inc., 330 F.Supp. 405, 407 (D. Me. 1971) (construing analogous provision of Maine long-arm statute).

(B) 'Causing Tortious Injury' Within the Territory

■ ■ The same "arising from" restriction embodied in subsection (a)(1) of the long-arm statute is of course present in subsection (a)(3). The Court of Appeals for the Third Circuit has recently had occasion to construe this portion of the Virgin Islands long-arm statute, noting as follows:

> The thrust of section 4903(a)(3) is directed to obtaining jurisdiction over those persons or entities who make a foray . . . into the jurisdiction and *injury is caused as a result of that foray.*

Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1060 (3rd Cir. 1982). Certainly, the personal injuries purportedly suffered by Dickson cannot be said to have been caused as a result of Hertz' activities in the Virgin Islands, regardless of how "persistent" or "substantial" those activities are deemed to be. Even the business injuries allegedly suffered by Thermac at its place of business in the Virgin Islands would have been caused (if at all) by an "act or omission" which took place not, as the statute requires "within this territory," but within the state of Florida. Subsection (a)(3) of our long-arm statute cannot "be satisfied by remote or consequential injuries which occur in [the forum] only because the plaintiff is domiciled, incorporated or doing business [there]." Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300, 303 (2nd Cir. 1968) (construing analogous provision of New York long-arm statute). Accord, Carty v. Beech Aircraft Corp., supra at 1064; Londa Manufacturing Co. v. Saturn Rings, Inc., 503 F.Supp. 52, 55 (D. Okl. 1980) ("it is the tortious injury, not any economic harms flowing from it which is required by the statute to be caused in [the forum]") (construing analogous provision of Oklahoma long-arm statute).

(C) 'Causing Tortious Injury' Within the Forum by Act or Omission Outside the Forum

■ The Commissioners comment to the Uniform Act notes that "regular solicitation of business or persistent course of conduct required by § 1.03(a)(4) [the counterpart to section 4903(a)(4) of the Virgin Islands statute] need have no relationship to the act or failure to act that caused the injury". 13 U.L.A. § 1.03 at 468 (1980).

Nevertheless, as the Carty court made clear, subsection (a)(4) like subsection (a)(3), is inapplicable where there is no evidence that the "injury" complained of occurred within the forum. In Carty the Court held that "when a commercial entity sues for tortious injury to its physical property the 'injury' takes place for jurisdictional purposes where the property is located." 679 F.2d at 1065. The same rationale applies of course to claims seeking recovery for personal injuries. See, e.g., Upton v. Empire of Iran, 459 F.Supp. 264, 266 (D.D.C. 1978) (subsection (a)(4) of Uniform Act held inapplicable where "indirect nature of injuries which, although endured [in the forum] were caused in" a foreign country); Leaks v. Ex-Lax, Inc., 424 F.Supp. 413, 415 (D.D.C. 1976) (subsection (a)(4) inapplicable where injuries allegedly suffered by plaintiff within the forum were merely descriptions of pecuniary losses, which might measure such injuries). Accord, Londa Manufacturing Co. v. Saturn Rings, Inc. supra. Accordingly, jurisdiction over the named defendant herein cannot be premised on § 4903(a)(4) because there was no "tortious injury in this territory" as required under the subsection.

## III. JURISDICTIONAL PRESENCE OF THE DEFENDANT WITHIN THE FORUM

Where a claimed injury is not premised upon activities within the forum state, a more stringent test than that applied under the long-arm statute must be referred to in order to determine whether a foreign corporate defendant is jurisdictionally "present". Such stringency is mandated by the Due Process clause[2] of the Constitution. International Shoe Co. v. Washington, 326 U.S. 310 (1945). Professor James has explained:

> [If] plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be fairly extensive before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.'

F. James, Civil Procedure at 640 (1965) (quoting International Shoe Co. v. Washington, supra at 316).

In the absence of an applicable statute, the standard which we must adopt in measuring the sufficiency of a foreign corporation's contacts with the forum, is that set forth in the Restatement

---

[2] Made applicable in the Virgin Islands by virtue of section 3 of the Revised Organic Act of 1954, 48 U.S.C. §§ 1541–1645, § 1561.

(Second) of Conflict of Laws (1971).[3] Section 52 of the Restatement provides in pertinent part as follows:

> A state has power to exercise judicial jurisdiction over a foreign corporation . . . in . . . situations where the foreign corporation has such a relationship to the state that it is reasonable for the state to exercise such jurisdiction.

The comments to section 52 explain that the "reasonableness" test will usually be met under two circumstances: (1) where a local subsidiary corporation "causes effects in the [forum] at the direction of the [foreign] parent corporation or in the course of the parent corporation's business . . ."; and/or (2) where the local affiliate conducts activities in the forum as the agent of the foreign corporation. Plaintiffs in the present case rely on each of these theories as a basis for jurisdiction over Hertz Corporation.

██ Whether the relationship between the foreign corporation and its local affiliate is characterized as an "alter ego", a "mere dependency" or a "general agency", the relevant case law suggests that the key to determining a jurisdictional "presence" lies in the extent of *control* which the nonresident corporation is authorized to exert or does exert over its in-state affiliate, notwithstanding the technical corporate independence of each entity. Under the Due Process clause, mere ownership of the stock of the local subsidiary or interlocking directorships between parent and subsidiary are not by themselves, sufficient to establish jurisdiction over the foreign parent corporation. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333 (1925). However, jurisdiction over the foreign corporation may be exercised consistent with Due Process restrictions when, as Professor Moore explains:

> the parent corporation exercises such control and domination over the subsidiary that they do not in reality constitute separate and distinct corporate entities . . . .

2 Moore's Federal Practice ¶4.25[6] at 4-273 (1978). "Put simply, separation of formal corporate identities does not impose a constitutional barrier to the exercise of jurisdiction over a nonresident corporation." Energy Reserves Group, Inc. v. Superior Oil Co., 460 F. Supp. 483, 508 (D. Kan. 1978). See also, Palley v. Martin Marietta Corporation, 1977 St. X. Supp. 275, 279–285 (D.V.I. June 3, 1977)

---

[3] The rules of the restatements approved by the American Law Institute are "the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." 1 V.I.C. § 4.

(jurisdictional presence of parent corporation imputed through subsidiary). The nature and extent of the relationship between the two entities is thus material to the "reasonableness" test contemplated by both the Restatement and International Shoe and to such factors as the nonresident corporation's ties to the particular forum, its reasonable expectation on being amenable to suit there, and the overall "fairness" of requiring it to actually litigate there. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); Perkins v. Benguet Consolidated Mining Company, 342 U.S. 437 (1952); Wells Fargo and Co. v. Wells Fargo Express Co., 556 F.2d 406 (9th Cir. 1977); Tuky Air Transport, Inc. v. Edinburgh Insurance Co., Ltd., 19 V.I. 238 (D.C.V.I. 1982) (nonresident corporation amenable to personal jurisdiction by virtue of its designation of a resident agent).

With those principles in mind we turn first to the terms of the licensing agreement between Hertz and its St. Croix affiliate, Preferred Rentals, Inc.[4]

The license agreement in question was entered into between Hertz International, Ltd.[5] and Robert D. Armstrong—the predecessor-assignor of Preferred—on December 21, 1973. This agreement granted Armstrong "an exclusive license to use the Hertz System" in St. Croix. Among the obligations imposed upon the licensee under the agreement are the following:

(1) That the licensee agrees to conduct his rental business "in accordance with the procedures, provision, methods, rules and regulations of [the] Hertz System . . . ."

(2) That the licensee shall use a rental form approved by the licensor and which "shall prominently incorporate the use of the Hertz name and trademark."

(3) That the licensee shall feature the name "Hertz" in all of its "advertising and sales promotion."

(4) That the licensee shall allow representatives of the licensor to "inspect [its] premises, records and vehicles . . . ."

---

[4] Should a jurisdictional presence be imputed to Hertz through Preferred, it would be unnecessary to decide whether such a presence can also be imputed through Puerto Rican cars, the St. Thomas affiliate of Hertz.

[5] The named defendant in this case is "Hertz Corporation." The licensor named in the 1973 agreement is "Hertz International, Ltd., à Delaware corporation, having its principal place of business [in] . . . New York, N.Y. . . . ." In addition, the license agreement discloses that another Delaware Corporation, "Hertz System, Inc." is the owner of the "Hertz System." The record does not indicate the precise relationship between the three entities, although it appears that System Inc. is a subsidiary of International Ltd.

509

(5) That the licensee shall "maintain rate structures . . . as may be promulgated by the licensor."

(6) That the licensee shall "advertise and promote the Hertz System" within the area of its license and "participate in any advertising campaigns, sales [or] promotional program" of the licensor.

(7) That the licensee shall "pay an amount equal to six percent (6%) of [its] annual gross revenue" to the licensor "in consideration of the benefits derived . . . as a member of the Hertz System . . . ."

Many of the cases in which a nonresident corporation was found to be jurisdictionally present have focused on the type of uniform promotional and trademark control which is present here. In Bramlett v. Arthur Murray, Inc., 250 F.Supp. 1011 (D.S.C. 1966), for instance, a franchise agreement permitted the nonresident defendant to maintain strict controls over the operations of its franchise dance studios in order "to protect its own interests image and prestige". Id. at 1013. On the basis of these promotional and managerial policies to which the affiliated franchise entities were contractually bound, the Court held as follows:

> The broad supervision maintained by defendant over its [local] franchise dealers, and the stringent controls exercised by it through its licensing agreements over the routine operations of its licensee studios is more than sufficient for this Court to determine that Arthur Murray, Inc. is actually present and doing business in [the forum].

Id. at 1015. Other courts have held that use of the absent corporation's trademark and "the presentation of a common marketing image," support a finding of a single interrelated business entity. Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., 402 F.Supp. 262, 328 (E.D. Pa. 1975) (finding of proper venue under the Clayton Act). See also, Roorda v. Volkswagenwerk, A.6., 481 F.Supp. 868 (D.S.C. 1979) (jurisdiction over nonresident defendant based on its license agreement with local automobile dealers); Chromium Industries, Inc. v. Mirror Polishing and Plating Co., Inc., 448 F.Supp. 544, 551 (N.D. Ill. 1978); Hitt v. Nissan Motor Co., Ltd., 399 F.Supp. 838, 850 (S.D. Fla. 1975); S.C.M. Corp. v. Brother International Corp., 316 F.Supp. 1328, 1332–33 (S.D.N.Y. 1970).

Another line of cases has focused on the ready interchange in financial, managerial and personnel matters between the nonresident defendant and its resident affiliate to determine whether the affiliate can be properly characterized as a "branch office", a "department", or a "marketing arm" of the parent entity. In

Frummer v. Hilton Hotels International, 227 N.E.2d 851 (N.Y. 1967), a New York resident sought redress in the New York courts for personal injuries sustained while a guest in defendant's London hotel. The Court found that although the defendant was not itself doing business in the forum, its New York reservation service "does all the business which [defendant] would do were it here by its own official." Accordingly the British defendant was held to be amenable to jurisdiction in New York. Id. at 854.

Relying in part on a civil procedure statute,[6] the New York courts have imputed jurisdictional contacts to foreign defendants through their resident affiliates where the affiliate corporation performs activities which are deemed "essential" to the nonresident corporation and which the nonresident would therefore perform directly, "but for" the existence of its local affiliate or subsidiary. See, e.g., Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2nd Cir. 1967) (relying on Frummer, supra); Jayne v. Royal Jordanian Airlines Corp., 502 F.Supp. 848 (S.D.N.Y. 1980); Bryant v. Finnish National Airline, 208 N.E.2d 439 (N.Y. 1965).

Although the license agreement between Hertz and Preferred in the instant case does not establish a parent-subsidiary relationship or otherwise indicate joint ownership, it reveals for jurisdictional purposes many of the well established indicia of a unified corporate enterprise. The integrated sales and promotion system, the shared use of a trademark, the supervision over records, and the mandatory adherence to uniform operational procedures strongly suggest that Preferred does more than merely solicit business on an ad hoc basis for Hertz. The guarantees which Hertz extracts as a condition for the exclusive use of its marketing "system", necessarily injects it (albeit at a distance) on a continuous basis into the daily operations of its licensees. (Indeed the record here indicates that Hertz personnel have at various times inspected Preferred's facilities in accordance with the license agreement.) In addition, by negotiating for such pervasive "control" over its Virgin Islands affiliate, Hertz is thereby put on notice of its amenability to suit here. It can come as no surprise to defendant that by imposing standardized operational methods on one of its licensees, it is in effect, doing business in and therefore "availing itself" of the protections of the state in which the licensee is located. Being sued in a distant state or country is simply "part of the price which may properly be demanded of those who

---

[6] "A court may exercise jurisdiction over persons, property or status as might have been exercised heretofore." N.Y.C.P.L. R. § 302(a).

extensively engage in international trade." Frummer v. Hilton Hotels International, Inc., supra, 227 N.E.2d at 857. See also, Hanson v. Denckla, 357 U.S. 235, 253 (1958).

■ We conclude that when read as a whole, the license agreement in question enables the nonresident defendant to so "control" and "dominate" its resident affiliate "as to in effect disregard the latter's independent corporate existence." Restatement, supra, comment b. Accordingly, the motion to dismiss for lack of personal jurisdiction will be denied.

## IV. FORUM NON CONVENIENS

Defendant has moved in the alternative for dismissal of the complaint on the basis of the inconvenient forum doctrine. That rule is currently embodied in 5 V.I.C. § 4905 which, like the long-arm statute, is adopted from the Uniform Interstate and International Procedure Act. See, 13 U.L.A. § 1.05. Section 4905 reads as follows:

> When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.

Having decided that the courts of the Virgin Islands may properly exercise jurisdiction over the defendant in this case, we now must determine whether or not the Virgin Islands is a convenient location in which to litigate the case.

■ We have recently noted that a dismissal under § 4905 is entirely within the discretion of the Court. Tuky Air Transport, Inc. v. Edinburgh Insurance Co., supra, 19 V.I. at 245 (motion to dismiss under § 4905 denied). The exercise of that discretion is to be determined by reference to the following criteria: (a) amenability of the parties to personal jurisdiction in other states in any alternative forum; (b) convenience to the parties and witnesses of trial in the forum and in any alternative forum; (c) differences in conflict of law rules applicable in the forum and in any alternative forum; or (d) any other factors which have a substantial bearing upon the selection of a convenient, reasonable and fair place of trial. Added to these criteria, is the well established principle that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

The present case presents a Virgin Islands plaintiff, a Delaware defendant doing business in Florida and (through its licensees) in

the Virgin Islands and a claim for personal injuries which arose entirely in Florida. Presumably, most of the witnesses will be residents of Florida; certainly the governing principles of tort law will be those of Florida. While plaintiffs' status as Virgin Islands residents weighs in favor of permitting trial in their chosen forum, Godfrey v. International Moving Consultants, Inc., 18 V.I. 60 (D.C.V.I. 1980),[7] it does not, by itself, preclude dismissal on forum non conveniens grounds. See, Carr v. Bio-Medical Applications of Washington, Inc., 366 A.2d 1089, 1093 (D.C. 1976) (applying Uniform Act). Although the record does not present a complete picture, the balance would appear to tilt away from the Virgin Islands as the appropriate forum for this lawsuit.

■ Notwithstanding the apparent inconvenience of plaintiffs' choice of forum, dismissal on forum non conveniens grounds must ordinarily be conditioned upon "the existence and availability of an adequate alternative forum." Shields v. MiRyung Construction Company, 508 F.Supp. 891, 895 (S.D.N.Y. 1981) (applying common law forum non conveniens doctrine) (emphasis added). Indeed in federal court practice, an outright dismissal for inconvenient forum is extremely rare since 28 U.S.C. § 1404(a) permits a district court[8] to transfer, "in the interest of justice," "any civil action to any other district . . . where it might have been brought." "If the more convenient forum is another federal court, . . . the case can be transferred there under Section 1404(a) and there is no need for dismissal." Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction § 3828 (1976). See also Watson v. DeFelice, 428 F.Supp. 1276 (D.D.C. 1977).

■ The record in the present case strongly suggests that transfer pursuant to Title 28 of the United States Code is an available alternative to dismissal pursuant to Title 5 of the Virgin Islands Code. Assuming that personal jurisdiction, subject matter jurisdic-

---

[7] Godfrey is distinguishable from the present case in that the claim for relief there was found to have "arisen" from defendant's contacts with the Virgin Islands, a factor which certainly weighs against dismissal for inconvenient forum.

[8] In Ferguson v. Kwik-Check, 7 V.I. 639, 308 F.Supp. 78 (D.V.I. 1970), this Court held that 28 U.S.C. § 1404(a) and § 1406(a) were applicable to the District Court of the Virgin Islands, and therefore granted a motion to transfer the action to the Middle District of Florida pursuant to § 1406(a) (venue in wrong district). Accord, Exporters Reliance Corp. Ltd. v. Marden, 356 F.Supp. 859 (S.D. Fla. 1973) (motion to transfer to the District Court of the Virgin Islands from the United States District Court for the Southern District of Florida granted on the basis of § 1404(a)).

tion and venue would properly lie in another United States Court,[9] there is no reason to dismiss the action. Because the record does not at this stage indicate all of the factors necessary for a proper transfer determination (e.g., the location of witnesses and documentary evidence; and relative hardship transfer would impose on the parties and on the District Courts; the existence of a related state or federal court action; whether the applicable substantive law will be different upon transfer), we will defer ruling on the transfer question pending a formal request for change of venue under 28 U.S.C. § 1404(a) submitted by either or both of the parties. However, as transfer is a possibility, the motion to dismiss for inconvenient forum will be denied at this time.

## ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that the motion of defendant, the Hertz Corporation to dismiss for lack of personal jurisdiction be, and the same is hereby, DENIED:

IT IS FURTHER ORDERED that the motion of the aforesaid defendant to dismiss for inconvenient forum be, and the same is hereby, DENIED WITHOUT PREJUDICE to its filing a motion for a change of venue pursuant to 28 U.S.C. § 1404(a).

---

[9] It would appear from the pleadings in this case that jurisdiction in the Southern District of Florida would be properly based on diversity of citizenship, 28 U.S.C. § 1332. If, however, jurisdiction could not have been initially established in a United States District Court, transfer under Title 28 would not be available.